JOSEPH W. HARTLEY, APPELLANT, v. E. MARY GREGORY AND OTHERS, APPELLEES.

1. **Mortgage:** COVENANT AGAINST INCUMBRANCES: PERSONAL JUDGMENT. In a mortgage of real estate to secure the purchase money, there was, among others, a personal covenant to save the mortgagee harmless from a prior mortgage then resting on the premises. The mortgagors further covenanted and agreed that, "If all of said conditions, agreements, and covenants" were left unperformed "for thirty days, then, at the option of the party of the second part, this mortgage may be declared due for the sum of $1100, with ten per cent interest from date." This security having been completely exhausted by a foreclosure of the prior mortgage, and the purchase money still being unpaid, *Held*, That the mortgagors, for this breach of their covenant, were liable to a personal judgment for the $1100, and interest as aforesaid.

2. **Practice:** RES ADJUDICATA. If a defendant rely upon the rule of *res adjudicata* as a defense, he should bring such facts into the record as will show affirmatively that the plaintiffs' relation to the former action was such as to make the judgment therein conclusive of the matter in controversy.

THIS was an action brought in the district court of Lancaster county to foreclose a mortgage executed by E. Mary Gregory and John S. Gregory to Silas Pratt, January 1, 1874, to secure a note of $1100, due Nov. 20, 1876, with 7 per cent interest, given by third parties, and made payable to the order of E. Mary Gregory; and to secure also $100, due Feb. 1, 1874, and of

a sum annually to make up the rate of interest on the $1100 note to ten per cent per annum. The mortgage was given to secure part of the purchase money of lot 3, block 36, in the city of Lincoln, sold by Pratt to the Gregorys. · Pratt afterwards sold and assigned to plaintiff, Hartley, who brought the action. A suit between these same parties, concerning the same mortgage, came here upon appeal at the October term, 1877, and is reported 7 Neb., 356. Upon reversal here, plaintiff dismissed that action and brought this, and upon the trial before POUND, J., judgment was rendered in favor of the defendants and dismissing the action. Plaintiff appeals.

*Lamb, Billingsley & Lambertson,* for appellant.

The validity of a mortgage does not depend upon the description of the debt contained in the deed, nor upon the form of the indebtedness, whether it be by note or bond, or otherwise; it depends rather upon the existence of the debt it is given to secure. 2 Jones on Mortgages, sec. 353. *Hodgdon v. Shannon,* 44 N. H., 572. *Griffin v. Cranston,* 1 Bosw., 281. *Jackson v. Bowen,* 7 Cow., 13. *Farmers' Loan and Trust Co. v. Curtis,* 7 N. Y., 466. *Coutant v. Servoss,* 3 Barb., 128. Although there be no note or bond, and no time is specified for the payment of the mortgage debt, the mortgage, if given to secure a debt that actually exists, is valid, and may be enforced immediately. *Brookings v. White,* 49 Me., 479. *Carnall v. Duval,* 22 Ark., 136.

*Harwood & Ames,* for appellees.

The Loan Association had a prior lien on these same premises. It foreclosed, and in that action, the Gregorys, Pratt, and this plaintiff were defendants, and the

property was sold for an amount less than that found due the Association. Can the plaintiff now bring an action to *foreclose* his mortgage? We think not. This is the first action of the kind ever commenced in any court.

LAKE, J.

It is not apparent whether the conclusion of the court below was placed upon the alleged insufficiency of the petition to state a cause of action, or upon the want of evidence to establish the truth of the material facts therein set forth. But howsoever this may be, we have not been able to discover any ground on which the judgment can securely stand.

That a cause of action entitling the plaintiff to relief is alleged must be conceded on a moment's reflection. The transaction out of which it grew was between the defendants and one Silas Pratt, who by assignment transferred all of his interest in the subject matter to the plaintiff. The material facts, which are either undenied or abundantly proven, may be briefly stated as follows: On the first of January, 1874, Pratt was the owner of lot three, in block thirty-six, in the city of Lincoln, together with the buildings and appurtenances thereunto belonging, subject, however to a mortgage executed by a former owner of the lot to secure to the Mechanics' Loan and Savings Association the sum of fourteen hundred dollars. Subject to this mortgage, Pratt sold and conveyed the lot to the defendants for twelve hundred dollars, taking in payment a promissory note for eleven hundred dollars against Hector Gawley and Andrew Stevenson, of Monroe county, Michigan, and one hundred dollars payable by the defendants personally, all nominally secured by a mortgage given by them to him upon the premi-

ses so conveyed. In this mortgage are several impor-
tant provisions which we shall have occasion to refer
to more particularly as we proceed.

However, the more fully to comprehend the force of
these provisions, and that they may have their proper
effect, it should be understood that the only affirma-
tive defense to the petition made by the answer is, that
Pratt agreed to and did take the Gawley and Steven-
son note at his own risk, and without recourse to the
defendants, in full payment and satisfaction of that
amount of the agreed price of the lot. That this claim
is without the least foundation, and depends on mere
assumption, will very clearly appear on an inspection
of the evidence. In truth there is nothing whatever
in the record to support it.

It appears that this note, which at that time was in
the hands of one Johnson, of Monroe, Michigan, with
whom it had been left by the defendants for collection,
was given in part payment of certain real property
which they had sold to the makers, and that it was
nominally secured by a *second* or *third* mortgage on
that and perhaps other property. It also appears that
shortly after the sale of this note to Pratt, the property
by which it was secured in Michigan was nearly if not
quite exhausted in the payment of prior liens, thus
leaving its payment, so far as the makers were con-
cerned, depending alone upon their personal responsi-
bility, which there is much evidence to show was
merely that of insolvents.

As events have demonstrated, one of the most im-
portant provisions in this mortgage from the Gregorys
to Pratt is that wherein it is agreed on their part to pay
all liens and incumbrances then on said premises,
"when the same fell due, and hold the said party of the
second part"—Pratt—"entirely harmless from the
same; particular reference being made to a certain

deed of trust, or mortgage, now a lien on said premises, executed by Catherine E. Cullen, to the Mechanics' Loan and Saving Association to secure the sum of fourteen hundred dollars." Had this promise been faithfully kept, together with certain other stipulations as to taxes and insurance, Pratt, and his assignee, the plaintiff, would have had ample security for the Gawley and Stevenson note, notwithstanding the inadequacy of the Michigan mortgage, and the irresponsibility of the makers. But the promises were not kept; the taxes were not paid; the mortgage to the Mechanics' Loan and Savings Association was not paid off, but, under foreclosure proceedings, was left to eat up the entire property on which it rested. The following recital from this mortgage will show more clearly its scope, and what, in addition to paying off this incumbrance, it was necessary for the defendants to do, in order fully to perform their agreement.

"And the said John S. Gregory and Mary E. Gregory do covenant with the said party of the second part and his assigns to keep the building now standing or hereafter to be erected on the above described premises insured against loss or damage by fire. * * * to the amount of one thousand dollars," for the use of "the said party of the second part, and assigns." * * * " And the said parties of the first part agree to pay all taxes and assessments on said premises, * * * and keep said premises free from all mechanics' liens until said sums are paid." It is further recited that inasmuch as the Gawley and Stevenson note only " draws seven per cent interest, payable semi-annually, said parties of the first part agree to make up the rate of interest on said note to ten per cent per annum, payable to said Pratt semi-annually. This is also given to secure the payment of one hundred dollars, to be paid February 21st, 1874, with ten per cent interest. Said $1100.00

note is payable to Mary E. Gregory or order, which * * * said parties of the first part, shall indorse over to said Pratt on or before February 13th, 1874. If all of said conditions, agreements, and covenants are fully kept and fulfilled, then this mortgage shall be void; but any failure herein for thirty days, then at the option of the said party of the second part, this mortgage may be declared due for the sum of $1100.00 with ten per cent interest from this date," etc.

We think it not amiss to say of these several conditions that, excepting perhaps the payment of the one hundred dollars due February 21st, 1874, not one of them has been performed. Even the $1100 note, as late as the 16th of April, 1878, had not yet been indorsed, but remained in possession of said Johnson, who was then still holding it as the agent of Gregory.

In view of the claim by the defendants, that this mortgage was intended to cover only the . equity of redemption under the prior incumbrance, there is another covenant on their part which should not be overlooked, viz.: that they were "well seized of the said premises in *fee simple*, and have good right, full power, and lawful authority to grant, bargain, and sell the same, in manner and form aforesaid, and that the same are free and clear of all liens and incumbrances whatsoever, except as above stated." And this single exception being the mortgage to the Mechanics' Loan and Saving Association, which they had expressly agreed to pay off and save Pratt harmless from, as before shown, this covenant, which cannot be controverted, shows most conclusively that it was the property itself, and not a mere equity of redemption, that was given as security.

It is asserted by counsel for the defendants in their brief that the parties here, plaintiff and defendants, were defendants in the suit foreclosing the prior mort-

gage under which the lot was sold. If the record showed this to be so, it would, of course, be fatal to this equitable proceeding, for, having the opportunity to do it, the plaintiff should have litigated all his claims to the mortgaged property in that action. If Hartley, as the assignee of this mortgage, were indeed a defendant there, the judgment, had it been properly pleaded, would very likely have been conclusive of his rights under it. At all events, his only remedy, even if that had been left to him, would lie in a personal action against the Gregorys to recover the damages occasioned by their failure to protect the security from other incumbrances, as they covenanted in the mortgage to do.

It being conceded that the property covered by the mortgage is completely exhausted by the incumbrance which the defendants covenanted to remove, it follows that the plaintiff is entitled to a personal judgment, in pursuance of a covenant to that effect, for the sum of $1100, and interest thereon from the first day of January, 1874, at the rate of ten per cent per annum, together with his costs to be taxed.

JUDGMENT ACCORDINGLY.